**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| Esperanza Duran | ) | **CASE NO. 11-23787(RDD)** |
| | ) | |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| ESPERANZA DURAN | ) | **ADV. PROC. NO._____** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LITTON LOAN SERVICING LP | ) | |
| And DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY AS TRUSTEE UNDER THE | ) | |
| POOLING AND SERVICING AGREEMENT | ) | |
| DATED JANUARY 1, 2007, GSAMP TRUST | ) | |
| 2007-FMI | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT OF THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 506(A)AND**
**BANKRUPTCY RULE 3012 TO DETERMINE THE VALUE OF**
**SECURITY AND CREDITOR'S ALLOWED SECURED CLAIM**
**AND PURSUANT TO TILA § 131(F) [15 U.S.C. § 1641(F)]AND PURSUANT TO**
**§6(E)(1)(B) OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**("RESPA") [12 U.S.C. § 2605(E)(1)] AND COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF**

---

## I. INTRODUCTION

1.1    This is an action for actual and punitive damages filed by the Debtor / Plaintiff,

Esperanza Duran,  (hereinafter "Plaintiff " or "Debtor") pursuant to Sections 105, 362, 501, 502,

503 and 506 of the Bankruptcy Code, and Rules 2016(a), 3001, 7001(1), 7001(2), 7001(7),

7001(8) and 7001(9) of the Federal Rules of Bankruptcy Procedure to determine the interest of

the Defendant(s) in the residential real estate of the Debtor and determine the amount of the

1

allowed secured claim, if any, of the Defendant "**DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED JANUARY 1, 2007, GSAMP TRUST 2007-FMI**."

1.2    This is also an action for damages brought by the Debtor, who is a consumer, for Defendant Litton Loan Servicing , LP's  violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"). Specifically, Plaintiff seeks the remedies as provided in TILA for Defendant's failures to respond to requests for the identity of the owners and holders of Plaintiff's two mortgage loans, and failures to provide notices of either of two subsequent transfer transactions as to one of the mortgage loans, as required by 15 U. S. C. § 1641(f) and § 1641(g) respectively[1].

1.3    This is also an action for damages brought by Debtor, who is a consumer, for Defendant Litton Loan Servicing , LP's  failure to respond to a "qualified written request" regarding the First Mortgage Loan § 6(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. § 2605(e)(1)]

1.4    This Complaint focuses on the fraud perpetrated on the Court and the Plaintiff by filing a false proof of claim and the Defendants' fraudulent misrepresentation of the owner of the Debtor's Mortgage Loan and the identity of the real party in interest.

1.5    This Complaint is an objection to the proof of claim filed by the Defendants in the Debtor's bankruptcy case which fails to establish any connection or relationship whatsoever  as between the Defendant "Deutsche Bank National Trust Company As Trustee Under The

---

[1]  Recent amendments to these sections of TILA may not yet be reflected in some codification services.  Section 404 of the Helping Families Save Their Homes Act, Pub. L. 111-22, 123 Stat. 1632, enacted and effective May 20, 2009, amended TILA § 131(f) [15 U.S.C. § 1641(f)] to provide private remedies for failure to respond to borrowers' requests for information under that section, and added a new section 131(g) [15 U.S.C. § 1641(g)] relating to notices of sale, assignment, or other transfer of mortgage loans.  The Housing and Economic Recovery Act of 2008, Pub. L. 110-289, sec. 2502(b), 122 Stat. 2857, amended 15 U.S.C. § 1640a to change the amount of statutory damages for violations of the type alleged in this Complaint to a range of not less than $400 nor greater than $4,000.00.

Pooling And Servicing Agreement Dated January 1, 2007, GSAMP TRUST 2007-FMI" and the Plaintiff's mortgage loan documents.

1.6    This Complaint is an objection to the proof of claim filed by the Defendants in the Debtor's bankruptcy case which fails to establish any valid claim on behalf of the Defendant "Deutsche Bank National Trust Company As Trustee Under The Pooling And Servicing Agreement Dated January 1, 2007, GSAMP TRUST 2007-FMI".

1.7    This complaint focuses on the total lack of response to the Plaintiff's written requests pursuant to TILA and RESPA for information pertaining to the identity of the owner and servicer of her mortgage loan and the accounting of the Plaintiff's mortgage loan.

## II.    PARTIES

2.1    The Plaintiff in this case was and is a debtor under Chapter 13 of Title 11 of the United States Code in case number 11-23787 (rdd), which case was filed on September 7, 2011 and is presently pending before this Court.

2.2    The Defendant, Litton Loan Servicing LP ("Litton" or "Defendant") is a corporation that originates, purchases, sells, and/or services residential mortgage loans. Defendant is headquartered in Houston, Texas. Litton purports to be the mortgage servicer of the mortgage loan debt which is subject of this complaint.  Litton may be served at 4828 Loop Central Drive, Houston, TX 77081.

2.3    The Defendant, "Deutsche Bank National Trust Company As Trustee Under The Pooling And Servicing Agreement Dated January 1, 2007, GSAMP TRUST 2007-FMI."  is the securitized Trust ("DBNTC" or the "Trust") which purports to be a secured creditor and the owner the Plaintiff's mortgage loan.

3

2.4     Plaintiff alleges that all of the actions of Defendant Litton Loan Servicing LP  as alleged

herein, if Litton is in fact a mortgage servicer under contract with the Defendant DBNTC, were

conducted with the consent and approval of Defendant DBNTC and in the course and scope of

the agency relationship between Litton and DBNTC.  Defendant DBNTC  is an insured

depository institute as defined in section 3 of the Federal Deposit Insurance Act assigned FDIC

and has appeared through counsel in the instant bankruptcy case, and may be served by mailing a

copy of the Summons and Complaint, via certified  first class U.S. Mail to 1761 East St.

Andrews Place, Santa Ana, CA 92705.

**2.5**     Defendant  DBNTC  is a mortgaged-backed securitized common law trust organized

pursuant to the law of the State of New York and, despite not having produced a mortgage note,

is the alleged owner and holder of the mortgage note executed by Plaintiff and secured by the

mortgage on Plaintiff's residence.   Plaintiff alleges that all acts and omissions of  Defendant

Litton as alleged herein were conducted with the consent and approval of the Trust and in the

course and scope of the agency relationship between Litton and the Trust. The Trust may be

served by serving the Trustee, Deutsche Bank National Trust Company by mailing a copy of the

Summons and Complaint, via certified  first class U.S. Mail 1761 East St. Andrews Place, Santa

Ana, CA 92705.

### III.     TILA COMPLAINT
### (TILA § 131 (f) and (g))

**A.  Jurisdiction**

3.1     Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title

28 of the United States Code in that this proceeding arises in and is related to the above-

captioned Chapter 13 case under Title 11 and concerns property of the debtor in that case.

3.2     Jurisdiction is further conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337.

3.3     This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

3.4     This Court has supplemental jurisdiction to hear all state law claims, if any, pursuant to Section 1367 of Title 28 of the United States Code.

3.5     The Plaintiff is informed and believes that this matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.  However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the Federal Bankruptcy Judge.

**B.  VENUE**

3.6     Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

**C.  ADDITIONAL FACTS**

3.7     On or about July 12, 2006 non-party "Fremont Investment and Loan" (hereinafter "Fremont" or "Originating Lender") made a mortgage loan to Plaintiff for the purpose of acquiring a dwelling at 171 South Broadway, White plains, NY 10605 (the "Property"), referred to in this Complaint as the "First Mortgage Loan."

3.8     In connection with the First Mortgage Loan the Plaintiff based on information and belief executed a promissory note (the "First Mortgage Note") in the original principal amount of $648,000.00 payable to Fremont.

3.9     The First Mortgage Note, based on information and belief, was secured by a Mortgage on

the Property dated July 12, 2006 and recorded in the Westchester County, New York Office of the County Clerk (the "First Mortgage"), which named Fremont as the Lender.

3.10    The First Mortgage Loan is a consumer credit transaction within the meaning of, and subject to, TILA.

3.11    The First Mortgage Loan is a "federally related mortgage loans" as defined in 12 U.S.C. § 2602(1).

### COUNT 1
**Failure to provide the identity of the owner or master servicer
of the First Mortgage Note as required by TILA § 131(f) [15 U.S.C. § 1641(f)]**

3.12    The allegations of paragraphs 1.1 through 3.11 of this Complaint are hereby re-alleged and incorporated by reference.

3.13    The debtor filed this case for bankruptcy relief under Title 11 of the United States Code on September 7, 2011.

3.14    The Defendant Litton was identified as a creditor and notified of the Plaintiff's bankruptcy case filing.

3.15    The Defendant DBNTC, a party not known to the Debtor/Plaintiff, was not identified as a creditor in the Plaintiff's bankruptcy petition.

3.16    On or about July 24, 2012 Plaintiff through counsel of record mailed a letter to Defendant-Litton requesting the name of the owner of the First Mortgage Note and clearly alerting Defendant to the fact that his request was being made pursuant to TILA § 131(f). A copy

of Plaintiff's request, the original of which Plaintiff's counsel signed and mailed, is attached hereto along with Postal Form 3811, the certified receipt form, as **Exhibit A**.

3.17    On or about July 24, 2012 Plaintiff through counsel of record mailed a letter to Defendant-Litton requesting the name of the owner of the First Mortgage Note and clearly alerting Defendant to the fact that his request was a "qualified written request" as defined in § 6(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. § 2605(e)(1)(B)]. A copy of Plaintiff's request, the original of which Plaintiff's counsel signed and mailed, is attached hereto along with Postal Form 3811, the certified receipt form, as **Exhibit B**.

3.18    Plaintiff's July 24, 2012 letters to Defendant Litton had the dual effect of invoking Plaintiff's rights under TILA § 131(f) as well Plaintiff's rights under RESPA § 6(e)(1).

3.19    The Defendant Litton did not respond within 20 days to Plaintiff's requests for the name of the owner and holder of the First Mortgage Note as required by § 6(e)(1) of RESPA [12 U.S.C. § 2605(e)(1), and as recently as September 9, 2009 has never provided Plaintiff with a response, thus violating both 12 U.S.C. § 2605(e)(1) (RESPA) and 15 U.S.C. § 1641(f) (TILA) with respect to the First Mortgage Loan.

## COUNT 2
**Failure to provide the identity of the owner or master servicer
of the Second Mortgage Note as required by TILA §131(f) [15 U.S.C. §1641(f)] and
failure to respond to a "qualified written request" regarding the Second Mortgage
Loan § 6(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA") [12
U.S.C. § 2605(e)(1)**

3.20    The allegations of paragraphs 1.1 through 3.21 of this Complaint are hereby re-alleged

and incorporated by reference.

3.21    On or about July 24, 2012 Plaintiff instructed his attorney to mail a letter[2] to Defendant Litton requesting the name of the owner and holder of the First Mortgage Note and clearly alerting Defendant to the fact that his request was being made pursuant to TILA § 131(f). A copy of the request that Plaintiff directed to be made on his behalf, together with the certified mail receipt signed on behalf of Defendant upon receipt of that request is attached hereto as **Exhibit B**.

3.22    The July 24, 2012 letter to Defendant Litton is a "qualified written request" as defined in § 6(e)(1)(B) of RESPA [12 U.S.C. §2605(e)(1)(B)]. Thus the said August 23, 2011 letter had the dual effect of invoking Plaintiff's rights under TILA § 131(f) as well Plaintiff's rights under RESPA § 6(e)(1).

3.23    The Defendant Litton did not respond within 20 days to Plaintiff's request for the name of the owner of the First Mortgage Note as required by § 6(e)(1) of RESPA [12 U.S.C. § 2605(e)(1), and as of the date of this complaint has never provided Plaintiff with a response, thus violating both 12 U.S.C. § 2605(e)(1) (RESPA) and 15 U.S.C. § 1641(f) (TILA) with respect to the First Mortgage Loan.

## IV.    OBJECTION TO PROOF OF CLAIM

---

[2] This letter and the letter of the same date referred to hereinabove in this Complaint are one in the same letters.

**4.1**    The allegations of paragraphs 1.1 through 3.23 of this Complaint are hereby re-alleged and incorporated by reference.

Defendant DBNTC is a New York common law trust created through a document entitled the Pooling and Servicing Agreement (the "PSA").

**4.2**    A copy of the PSA was filed under oath with the Securities Exchange Commission, and is available online at

http://sec.gov/Archives/edgar/data/1385839/000091412107000407/gs7344726-ex4.txt

**4.3**    Under the PSA, loans were supposedly pooled into a trust and converted into mortgaged backed securities ("MBS") that could be bought and sold by investors–a process known as securitization.

**4.4**    The PSA defines the rights, duties and obligations of the parties to the Trust Agreement.

**4.5**    The PSA provided that the "Closing date" for the trust was **January 30, 2007**. ( see PSA, 1.01 "Definitions")

**4.6**    The PSA provided that the "Cut-off date" for the trust was **January 1, 2007**. ( see PSA, 1.01 "Definitions")

**4.7**    The PSA also incorporates by reference a separate document called the Mortgage Loan Purchase Agreement ("MLPA").

**4.8**    These various documents, and hence the acquisition of the mortgage assets for the Trust, are governed under the law of the State of New York pursuant to section 12.03 of the PSA.

9

**4.9**      Section 12.03 of the PSA provides, "Governing Law. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

**4.10**   The "Depositor" named in the PSA is GS MORTGAGE SECURITIES CORP., a

Delaware corporation. (see PSA 1.01 "Definitions")

**4.11**      The "Sponsor" named in the PSA is "Goldman Sachs Mortgage Company, a New York limited partnership, and its successors in interest (see PSA 1.01 "Definitions")

**4.12**   The "Trustee" named in the PSA was Deutsche Bank National Trust Company. (see PSA

1.01 "Definitions")

**4.13**   The "Servicer" listed in the PSA is FREMONT INVESTMENT & LOAN, a California

corporation. (see PSA 1.01 "Definitions")

**4.15**   The Trust, being sued through its trustee, is a New York Corporate Trust formed to act as

a "REMIC" trust (defined below) pursuant to the U.S. Internal Revenue Code ("IRC").

**4.16**   Pursuant to the terms of the Trust Section 2.05 "REMIC Matters" and the applicable

Internal Revenue Service ("IRS") regulations adopted and incorporated into the terms of the

Trust, the "closing date" of the Trust (January 31, 2007) is also the "Startup Day" for the Trust

under the REMIC provisions of the IRC.

**4.17**   The Startup Day is significant because the IRC ties the limitations upon which a REMIC

trust may be receive its assets to this date. The relevant portion of the IRC addressing the definition of a REMIC is:

(a) General rule. For purposes of this title, the terms 'real estate mortgage investment conduit'and 'REMIC' mean any entity—

(1) to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years,

(2) all of the interests in which are regular interests or residual interests,

(3) which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata),

(4) as of the close of the 3rd month beginning after the startup dayand at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments.   **26 U.S.C. § 860D**.

**4.18**     The IRC also provides definitions of prohibited transactions and prohibited contributions which are relevant to this case as well. In the context of this case, the relevant statute is the definition of prohibited contributions which is as follows:

**26 U.S.C. 860G(d)(1)** states:

Except as provided in section 860G(d)(2), "if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."

**26 U.S.C. 860G(d)(2)** states:

(2) Exceptions. Paragraph (1) shall not apply to any contribution which is made

in cash and is described in any of the following subparagraphs:

(A) Any contribution to facilitate a clean-up call (as defined in regulations) or a qualified liquidation.

(B) Any payment in the nature of a guarantee.

(C) Any contribution during the 3-month period beginning on the startup day.

(D) Any contribution to a qualified reserve fund by any holder of a residual interest in the REMIC.

(E) Any other contribution permitted in regulations.

**4.19**    The PSA addresses these sections of the IRC by obliging the parties to the Trust to avoid any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions or prohibited transactions.

**4.20**    Pursuant to the PSA, the Trustee may not "accept any contributions to any REMIC created hereunder after the Closing Date."

**4.21**    These PSA provisions are important to the court's analysis of the facts in this case because of the interplay between the New York trust law, the IRC's REMIC provisions, and the PSA's incorporation of the IRC REMIC provisions.

**4.22**    The terms of the PSA include a specific time, method and manner of funding the Trust with its assets. The most critical time is the Trust's closing date, January 31, 2007. According to

the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust *on or before the closing date*. This requirement is to ensure that the Trust will receive REMIC status and thus be exempt from federal income taxation.

**4.23**    The PSA provides for a window of 90 days after the Trust closing date in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the Trust. Thus, for an asset to become an asset of the Trust it must have been transferred to the Trust within the time set forth in the PSA. The additional 90 days in the timeline requirement is incorporated from the REMIC provisions of the IRC to provide a "clean-up period" for a REMIC to complete the documents associated with the transfers of assets to a REMIC after the startup day (which is also the Trust closing date). Therefore, according to the plain terms of the Trust agreement in this case, the closing date/startup date was January 31, 2007 and the last day for transfer of assets into the Trust was May 1, 2007.

**4.24**    A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA, and provides that the Depositor  was to convey the mortgages to the Trust.

**4.25**    In accordance with the terms of the PSA and the Prospectus filed with the SEC the only acceptable method by which the Defendant Trust could have acquired the Plaintiffs mortgage loan is through a precise chain of THREE(3) true sales as follows:

Fremont Investment and Loan → Goldman Sachs Mortgage Company ( Sponsor) → GS

MORTGAGE SECURITIES CORP (Depositor) → Deutsche Bank National Trust Company  As

Trustee Under The Pooling And Servicing Agreement Dated January 1, 2007, GSAMP Trust

2007-FMI

**4.26**     The Plaintiff's mortgage loan originated with Fremont Investment and Loan as aforesaid,

there would have to be a series of THREE (3) true sales in order for the Trust to claim ownership

of the Plaintiff's loan.  None of the required true sales are evident in the documents attached to

the proof of claim at issue.

**4.27**     Section 2.01 the Conveyence Provisions of the PSA requires that the Depositor provide

the Trustee, in relevant part, with the following:

```
(i) the original Mortgage Note (except for up to 0.50% of the
Mortgage Notes for which there is a lost note affidavit and a copy
of the Mortgage Note) bearing all intervening endorsements, endorsed
"Pay to the order of _____, without recourse" and signed in the
name of the last endorsee. To the extent that there is no room on
the face of the Mortgage Notes for endorsements, the endorsement may
be contained on an allonge unless the Trustee is advised by the
Responsible Party that state law does not so allow. If the Mortgage
Loan was acquired by the Responsible Party in a merger, the
endorsement must be by "[last endorsee], successor by merger to
[name of predecessor]". If the Mortgage Loan was acquired or
originated by the last endorsee while doing business under another
name, the endorsement must be by "[last endorsee], formerly known as
[previous name]"
```

Had the Plaintiff's Note been acquired by the Defendant Trust, it should bear no less than TWO

(2) intervening indorsements and a third indorsement in blank.

**4.28**     New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire

property "in the name of the trust as such name is designated in the instrument creating said

trust property." Thus, for transfer to an trustee to be effective, the property must be

registered in the name of the trustee for the particular trust. Trust property cannot be held

with incomplete endorsements and assignments that do not indicate that the property is held

in trust by a trustee for a specific beneficiary trust. Under New York law an attempt to

transfer to a trust which fails to specify both a trustee and a beneficiary is ineffective as a

conveyance to the Trust. "The failure to name a beneficiary for the Trustee renders the

assignment without merit."


**4.29**    Trustees for securitizations often occupy many roles simultaneously and conflictingly

both as document custodians and trustees for thousands of securitizations as well as for

various parties who are active in the securitization process including originators, servicers,

sponsors and depositors. Accordingly, it is inconceivable that anything other than

registration into "the name of the trust as such name is designated in the instrument creating

said trust property" does not qualify as delivery to any particular securitization trust. Absent

such registration, there would be nothing that would indicate which of thousands of trusts

in the care of a trustee a particular promissory note might belong to or if it were the personal

property of the trustee itself.


**4.30**    Plaintiff  objects to the Proof of Claim 5-1 (copy attached hereto as **<u>Exhibit C</u>**) on the

following grounds:


**4.31**    The Note affixed to the proof of claim is required  and certified to be true copy of the

original as per FRBP 3001(c) and 9011 to be a duplicate of the original.  There is no Note

attached to the Proof of Claim 5-1, only a partial document "Adjustable Rate and Balloon

Payment Rider" is attached which appears to be a thrown together series of pages from more

than one document ( see Ex. C for 2 pages "1 of 4" to Adjustable Rate and Balloon Rider")

and there otherwise is no endorsement ot reference to an actual note endorsed and therefore there

is no enforceable note in favor of the named creditor, ie., the Trust.

**4.32**    As set forth herein above the lack of a complete Note and no endorsements attached to

the Proof of Claim 5-1 does not comport with the requirements of the PSA .

**4.33**    The Mortgage affixed to the to the proof of claim is required  and certified to be true copy

of the original as per FRBP 3001(c) and 9011 to be a duplicate of the original.  The Mortgage is

in favor of the lender, Fremont Investment and Loan, not the named creditor.  There is no

assignment of mortgage attached to the proof of claim and despite passage of time, the same has

not been amended.  The named creditor does not maintain a valid lien on the debtor's property.

**4.34**    Claimant failed to attach any supporting documentation to support its claims for interest,

Late charges, escrow shortage, inspection fees or the use of a suspense account.  This failure to

attach supporting documentation violated Bankruptcy Rule 3001(c).

**4.35**    Upon information and belief, Claimant does not have standing, and has not established

that it acquired the note and the mortgage as required by law and the Pooling and Service

Agreement.

## B.  LACK OF STANDING / REAL PARTY IN INTEREST

**4.38**    The allegations in paragraphs 1.1 through 4.35 of this complaint are realleged and incorporated herein by this reference.

**4.39**    There is no documentation provided in Proof of Claim #5-1 proving a complete chain of title from the originating lender, Fremont, to DBNTC.

**4.40**.    There is no documentation provided in Proof of Claim #5-1 proving a complete chain of title from the originating lender, Fremont, to DBNTC.

**4.41**    The creditor must prove that it is the real party in interest as the rightful owner and holder of both the Note and the Mortgage and that it has the legal right to enforce the same; DBNTC has failed to meet this burden.

**4.42**    There was no writing filed with the Proof of Claim demonstrating the purported creditor's interest on the property securing such claim in violation of B.R. 3001(c).

**4.43**.    The  SEC records filed under penalty of perjury are contradicted by the lack of a Note and the lack of a chain of indorsements on the pages of what might be part of a Note.

**4.44**    There is no apparent chain of transfers attached to the proof of claim to explain how or when the purported creditor  came to own the debtor's loan.

**4.45**   A federal Court cannot have jurisdiction unless a party has constitutional standing. The claimant fails to provide any credible evidence as to if and when a negotiation of the Note to the Trust in any manner including the method mandated by the PSA.

**4.46**   The purported creditor  is therefore, not a creditor or the real party in interest and has no standing to file the instant motion.

**4.47**   Deutsche Bank  as Trustee of the Trust  has no constitutional standing to file its sworn proof of claim in the Plaintiff's Chapter 13 case.

**4.48**   In the bankruptcy courts, procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. Procedure has an undeniable impact on the issue of who can assert a claim as a holder, because pleading *and* standing issues which arise in the context of our federal court system. According F.R.Civ. Pro. 17, *"[a]n action must be prosecuted in the name of the **real party in interest**.* (emphasis added)

**4.49**   A Proof of Claim is subject to Fed.Rules Bankr. Pro. 7017 which is a restatement of F. R. Civ. P. 17.

**4.50**   The Plaintiff avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the *owner* of a note. Because the actual name of the actual note owner is not stated , the creditor's  very claim is defective.

**4.51**    In the case at bar, the claimant, DBNTC, establishes only that it is neither the holder nor the owner of the note.  DBNTC fails to assert that it has a beneficial interest in the Plaintiff's mortgage loan.


**4.52**    The United States Constitution Article III §2 specifically limits the jurisdiction of the federal courts to "Cases or Controversies."  Justice Powell delivered the Opinion of the Supreme Court in the case of Warth v. Seldin addressing the question of standing in a federal court as follows:

> In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues. This query involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. In its constitutional dimension, standing imports judiciability: whether the plaintiff has made out a —case or controversy‖ between himself and the defendant within the meaning of Art.III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of judiciability, the standing question is whether the plaintiff has —alleged such a personal stake in the outcome of the controversy‖ as to warrant *his* invocation of federal –court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Baker v. Carr 369 U.S.186,204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663(1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party…A Federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered —some threat or actual injury resulting from the putatively illegal action…‖ Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146,1148, 35 L.Ed.2d 536 (1973).‖ Warth v. Seldin 422U.S.490, 498 (1975)

> Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. … even when the plaintiff has alleged injury sufficient to meet the —case or controversy‖ requirement, this Court has held that the **plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties**. E.g., Tilestion v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).‖ Warth v. Seldin 422U.S.490, 499 (1975) (**emphasis added**)

**4.53**    The Plaintiff in the instant case reiterates that a party seeking relief in any Federal Court "bears the burden of demonstrating standing and must plead its components with specificity." _Coyne v American Tobacco Company, 183 F.3d 488, 494 (6th Cir. 1999)_. Again, the minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. _Valley Forge Christian College v Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982)_. Furthermore, in order to satisfy the requirements of Article III of the United States Constitution, any claimant asserting rights in a Federal Court must show he has personally suffered some actual injury as a result of the conduct of the adverse party. _Coyne, 183 F.3d at 494; Valley Forge, 454 U.S. at 472_.

**4.54**    As set forth hereinabove, the claimant can make no assertions as to its own interest in the outcome of the instant claim it is making, nor does claimant make any mention of any perceived injury to itself.

**4.55**    DBNTC has not shown that it has any stake in the ownership of the Note and Mortgage as either a holder or owner. Any attempt to indicate itself as an owner of the Plaintiff's loan has been by way of fraudulent statements and/or misleading documents.

**4.56**    DBNTC must demonstrate _how, when and from whom_ it derived its alleged rights.  _In re Tandala Mims,_ 10- 14030(mg/scc), the Hon. Judge Martin Glen denied Wells Fargo's first attempted Motion for Relief from Stay on the Court's own motion in a written opinion dated October 27, 2010.  Thereafter, Wells Fargo renewed its motion a second time, claiming, in part, possession of the original note endorsed in blank.  The court was not convinced, stating in its

December 9, 2010 Order denying Wells Fargo's Renewed Motion for Relief From Stay  as
follows:

> "With respect to the assignment of the note and mortgage, the October 27
> Opinion stated: 'An assignment in anticipation of bringing a lift-stay motion
> does not in and of itself indicate bad faith. However, in the absence of a credible
> explanation, *describing how, when and from whom Wells Fargo derived its
> rights, relief from the stay will not be granted.*' *Mims*, 438 B.R. at 57 (emphasis
> added). The Renewed Motion provides some but not all of this information."

A copy of  Judge Glenn's order denying Wells Fargo's Renewed Motion for Relief
from Stay appears in the <u>Mims</u> ECF Docket as Document #42.

**4.57**      In the instant case as in the <u>Mims</u> case, there is a complete lack of any credible
explanation describing how, when and from whom DBNTC  derived its rights.  There is a clear
question of fact as to the issue of DBNTC's standing to bring a claim.

**4.58**      To the extent Litton had a hand in filing the POC together or on behalf of the other
defendant, constitutes a gross and willful violation of the Automatic Stay pursuant to 11 U.S.C.
section 362(a)(3) by all involved.

**4.59**    As a result of the violation of the automatic stay as described herein, all defendants are
liable to the Plaintiff for actual damages, punitive damages and legal fees under 362(k)(1) of the
Bankruptcy Code.

## V.      CLAIM FOR RELIEF: DECLARATORY JUDGMENT

**5.1**      The allegations in paragraphs 1.1 through 4.59 of this complaint are realleged and
incorporated herein by this reference.

21

**5.2**     At no time relevant to the allegations herein was Litton  or DBNTC the actual holder and

the lawful owner of any mortgage note allegedly signed by the Plaintiff.


**5.3**     At no time relevant to the allegations herein was either Litton or DBNTC the actual

"holder" and the lawful owner or "assignee" of the mortgage note originally signed by the

Plaintiff.


**5.4**     Therefore, the Defendants have no constitutional standing to file a claim or otherwise

participate in this Chapter 13 proceeding.


**5.6**     Because none of the Defendants are the actual holder and lawful owner or assignee of the

mortgage, Defendants have no security interest, and no right to seek to collect money from

Plaintiff.


**5.7**     As a result thereof the Defendants should be ordered to pay back to the Chapter 13

Trustee all funds received on the arrearage claim, all funds received from pass-through mortgage

payments, and all funds received from the Plaintiff in the form of direct mortgage payments.


**5.8**     Plaintiff seeks a declaratory judgment holding that:

A. The Trust has no enforceable secured or unsecured claim against the property of the

estate in bankruptcy;

B. Litton has no enforceable secured or unsecured claim against the property of the

estate in bankruptcy; and

22

C. DBNTC, has no enforceable secured or unsecured claim against the property of the

estate in bankruptcy.

**5.9**      Plaintiff also seeks a judgment declaring Defendants' claimed security interest void

pursuant to 11 U.S.C. § 506(d).

## VI.      CLAIM FOR RELIEF: FRAUD ON THE COURT INCLUDING FALSE AND FRAUDULENT PROOF OF CLAIM

**6.1**      The allegations in paragraphs 1.1 through 5.9 of this complaint are realleged and

incorporated herein by this reference.

**6.2**      The proof of claim filed by Litton and/or DBNTC was false and fraudulent for the

following reasons:

A. It does not include a note bearing proper endorsements;

B. DBNTC does not actually own the note or have constitutional standing to file a proof

of claim;

C. It includes fees that were excessive, and that were neither reasonable nor

necessary; and

D. Upon information and belief, it includes unsubstantiated escrow arrearages.

**6.3**      This Court has authority under 11 U.S.C. § 105(a) to "issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of this title."

**6.4**     The Court should impose sanctions on Defendants for filing an improper claim in this

case. Plaintiff therefore requests that Court invoke the powers granted to it by 11 U.S.C. § 105(1)

and issue such order, process or judgment necessary to address the fraud of the Defendants

and to prevent any future fraud or abuse of process. In the alternative, the Plaintiffs request

this Court to waive the pre-notice time requirements of Rule 9011 of the Bankruptcy Rules

and to impose sanctions under that Rule.


WHEREFORE, Plaintiff prays:

A. That the Court disallow and strike the Proof of Claim Number 5-1;

B. That the Court direct the Chapter 13 Trustee to strike the Proof of Claim;

C. That Litton and DBNTC be precluded from filing any amended, modified, or substitute claim

in this case;

D. That the alleged arrearages contained in the Proof of Claim be canceled

and forever discharged;

E. That Claimant be required to pay legal fees and expenses to the attorney for Plaintiff ;

F. That the Claimant provide a complete accounting of the Debtor's mortgage loan account,

forthwith.

G.  That Defendants claimed security interest be declared void pursuant to 11 U.S.C. §

506(d);

H.  For an Order of this Court awarding Plaintiff the relief provided by TILA as to each of the

four separate violations of TILA set forth above, including statutory damages in the amount of

$4,000.00 for each violation, actual damages if any be proven, reasonable attorney's fees, and

costs expended in this proceeding; and

24

H. That Plaintiff have such other and further relief as the Court may deem just and

proper.

WHEREFORE, Plaintiff prays that the Court grant the relief requested herein.


This the 9th Day of October 2012.

RESPECTFULLY SUBMITTED,

/s/ Linda M. Tirelli
LINDA TIRELLI
COUNSEL FOR DEBTOR
1 North Lexington Avenue, 11th FLOOR
WHITE PLAINS, NEW YORK 10601
PH: (914)946-0860